UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Becky J. Groska,

        Plaintiff,

v.

                                        Civ. No. 05-114 (JNE/FLN)
                                        ORDER

Northern States Power Company Pension
Plan; Successor(s) to the Northern States
Power Company Pension Plan; NSP
Optional Disability Plan; Successor(s) to
the NSP Optional Disability Plan; and Xcel
Energy, Inc.,

        Defendants.

---

Katherine L. MacKinnon, Esq., appeared for Plaintiff Becky J. Groska.

Timothy Gelinkse, Esq., and Timothy Thornton, Esq., Briggs and Morgan, P.A., and Daniel Shoemaker, Esq., Xcel Energy, Inc., appeared for Defendants Northern States Power Company Pension Plan; Successor(s) to the Northern States Power Company Pension Plan; NSP Optional Disability Plan; Successor(s) to the NSP Optional Disability Plan; and Xcel Energy, Inc.

---

       Becky Groska brought this action against Northern States Power Company Pension Plan; Successor(s) to the Northern States Power Company Pension Plan; NSP Optional Disability Plan; Successor(s) to the NSP Optional Disability Plan; and Xcel Energy, Inc. (Xcel), (collectively, Defendants) pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2000). She alleges that Defendants improperly denied her claim for long-term disability (LTD) benefits. She also alleges that the plan administrator breached various fiduciary duties it owed her and failed to timely provide plan documents when she requested them. The case is before the Court on Defendants' motion for judgment on the pleadings. For the reasons set forth below, the Court denies the motion.

# I.    BACKGROUND

Groska worked for Northern States Power Company (NSP) from November 7, 1988, until mid-August 2000.  She enrolled in two disability plans offered by NSP—the core plan and the optional plan.  The core plan, part of a combined pension and disability plan, replaced approximately fifty percent of a disabled employee's pre-disability income.  The optional plan, funded by employee contributions, allowed enrollees to enhance their monthly disability benefit above what was paid under the core plan by an additional ten or twenty percent of pre-disability income.  NSP was the administrator of both plans.

In 1998, Groska was diagnosed with fibromyalgia.  By early 2000, she suspected that she might be disabled.  As a result, she informed various individuals at NSP, including her supervisor and human resources personnel, of her condition and her concerns about her ability to work.  In addition, she called the NSP benefits hotline and spoke with human resources about what she needed to do to apply for disability benefits.  She was told that the first step in the application process was to visit Dr. Thomas Jetzer, a NSP-sponsored physician, who would determine whether her claim ought to be approved.  After examining Groska on March 15, 2000, Jetzer told her that he would not support her claim.  He indicated that Groska's primary complaint was fatigue, observed that "we're all a little tired," and submitted a report to human resources specifically declining to support her claim that she was disabled.  Groska did not receive written notice of the denial of her benefits, nor was she informed of her right to appeal the decision.

In 2000, NSP and New Century Energies, Inc., merged to form Xcel Energy, Inc. (Xcel). That summer, Groska was informed that her job was "merger affected."  As a result, she was given the option to compete with other similarly situated employees for remaining positions or to

resign.  NSP offered two severance-package options for those who elected to resign:  the basic

package and the enhanced package.  The enhanced package provided more money and benefits

in exchange for a release that provided in relevant part:

> 3.     In return for the consideration stated in paragraph 2, to which Employee is not otherwise entitled, Employee, individually and on behalf of his/her successors, heirs and assigns, hereby irrevocably and unconditionally RELEASES, WAIVES, and DISCHARGES the Company, its predecessors, successors and any affiliated and subsidiary companies, corporations, partnerships or other business enterprises, and their respective officers, directors, stockholders, owners, supervisors, managers, partners, employees, and agents ("Releasees"), from any and all claims, demands, actions and liabilities whatsoever, whether known or unknown, suspected or unsuspected, that Employee may have or claim to have in any way relating to or arising out of any event or act of omission or commission occurring on or before the date of Employee's execution of this Agreement and Release . . . .

> . . . .

> The only exceptions to this paragraph and to paragraph 4 are claims for workers' compensation and unemployment compensation claims, if any, to the extent required by law.

After receiving written materials describing her options and attending a company

presentation, Groska elected to resign and take the enhanced severance package.  Accordingly,

on August 24, 2000, she signed the NSP Severance Plan Agreement and Release Form (Release).

In exchange, she received ten months continued wages and ten months of health insurance.

In October 2001, an Administrative Law Judge (ALJ) determined that Groska was and

had been unable to engage in any gainful activity by reason of a disability since August 16, 2000.

This prompted Groska to begin wondering whether she was entitled to benefits under the plans in

which she had enrolled during her employment at NSP.  In January 2003, she wrote to request

copies of her disability plan documents so that she could apply for disability benefits.  The plans

responded on February 28, 2003, notified Groska that they regarded her request as a claim for

benefits, and denied her claim as untimely.  Groska appealed this decision on August 25, 2003.

On October 21, 2003, the plans denied the appeal because her claim was untimely and because she had released all claims by accepting enhanced severance benefits.

Groska commenced this lawsuit on January 19, 2005.  Defendants now move to dismiss Groska's claims under Federal Rule of Civil Procedure 12(c).

## II.    DISCUSSION

"After the pleadings are closed . . . any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[1]  Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the moving party is entitled to judgment as a matter of law.  *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002); *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001).  A court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party.  *Faibisch*, 304 F.3d at 803; *Potthoff*, 245 F.3d at 715.  The court is, however, "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

---

[1]      A court must convert a motion for judgment on the pleadings to a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court, *see* Fed. R. Civ. P. 12(c), unless the materials submitted are matters of public record, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings.  *See Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700-01 (8th Cir. 2003); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  Defendants have supported their motion with materials that are necessarily embraced by the pleadings, including the Release Groska executed, relevant portions of the NSP Pension Plan, relevant portions of the NSP Optional Disability Plan, and the NSP Severance Plan Summary Plan Description.  The Court has not considered any other materials outside the pleadings.  Accordingly, the Court will not treat Defendants' motion as one for summary judgment.

**A.      Breach of Fiduciary Duty and Benefits Denial Claims**

*1.      Release*

Defendants first argue that Groska voluntarily waived and discharged her breach of fiduciary duty and LTD benefits denial claims by executing the Release.  It is well established that ERISA claims can be waived by release.  *See Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990).  The release must, however, be knowing and voluntary; a release will not be enforced if, in light of the totality of the circumstances, the fiduciary obtained the release in violation of its duties to the beneficiary.  *See id.; Barbera v. Minn. Mining and Mfg. Co. Long-Term Disability Plan/Preferred Works Group*, Civ. No. 04-1598, 2004 WL 2434699, at *4 (D. Minn. Oct. 26, 2004) (court skeptical of release's validity in light of plaintiff's allegation that defendants failed to comply with the plan's notice requirements).

In this case, Groska claims that NSP breached its fiduciary duties to her in several respects and, as a result, she did not know that she was releasing enforceable ERISA rights. Specifically, she claims that NSP breached its fiduciary duties by misinforming her as to the procedures for applying for LTD disability benefits and neglecting to notify her in writing that her March 2000 claim was denied and she had a right to appeal the decision.   Groska's Complaint alleges that these breaches misled her "into foregoing her claim for disability benefits before or immediately after she separated from NSP" and that she was thereby "induced to sign a form severance agreement that arguably waives or releases any claims she had for disability benefits."

At this stage of the litigation, Defendants do not dispute that NSP owed Groska fiduciary duties or that NSP may have breached some of its duties to her.[2]  Defendants argue, however, that refusing to enforce a release is not a proper remedy for NSP's breaches, particularly for failure to issue a written denial of a claim.  According to Defendants, Groska's sole remedy was to treat the claim as denied and appeal.  The Court disagrees.  Under *Leavitt*, if Groska can substantiate her allegation that NSP's breaches of fiduciary duty caused her unwittingly to relinquish her ERISA rights, enforcement of the Release may be properly refused.  Accordingly, Defendants' motion to dismiss on the basis of the Release is denied.

   2.     *Eligibility for Disability Benefits*

Defendants next argue that Groska had to be disabled when her employment terminated to be eligible for benefits under the core and optional plans.  Defendants read the Complaint to assert that Groska became disabled the day after NSP terminated her employment.  The Court rejects Defendants' argument.  Groska's Complaint alleges that she was totally disabled "by August, 2000."  *See* Compl. ¶ 26 (emphasis added).  There is no question Groska was employed at NSP at the beginning of August 2000.  Read in the light most favorable to Groska, the Complaint alleges that she became disabled while she was employed at NSP.

Defendants also argue that by executing the Release, Groska in effect stipulated that she was not disabled as of her termination date.  According to Defendants, the Release incorporated by reference the NSP Severance Plan Summary Plan Description (Description).  The Description, in turn, established that employees terminated because of disability were not eligible for severance benefits.  Defendants reason that by executing the Release and accepting severance

---

[2]     Defendants assert that they provided Groska with sufficient notice that her alleged claim was denied and the reason for the denial, but do not dispute that they failed to provide her with "[a]ppropriate information as to the steps to be taken if [Groska] wishe[d] to submit . . . her claim for review."  29 C.F.R. § 2560.503-1(f)(4) (2000).

payments, Groska represented that she was qualified to receive benefits and was not therefore disabled.  The Court disagrees.  Even assuming Groska's execution of the Release amounted to a stipulation that she was not disabled as of the date of her termination, as discussed above, the Release may not be enforceable.  The Court cannot therefore conclude that the stipulation is conclusive evidence that Groska was not disabled as of the date of her termination from NSP.

For these reasons, the Court denies Defendants' motion to dismiss insofar as Defendants assert Groska became disabled after her employment at NSP ended.

3.      *Timeliness of Claim*

Next, Defendants argue that Groska's claims must be dismissed because she failed to file a demand for benefits within the time specified and in the form required by the plans.  Under NSP's core disability plan, a participant is not entitled to disability benefits unless a written request is submitted to the employer within thirty days after the participant's termination of employment.  According to Defendants, Groska was terminated August 15, 2000, but did not file a written claim for benefits until January 24, 2003.

The Court rejects Defendants' argument for two reasons.  First, Groska has alleged that she made a claim for benefits in early 2000.  She alleges, for example, that from 1998 through 2000, she notified various individuals at NSP including her supervisor, human resource department professionals, and an anonymous person on the NSP benefits hotline about her disease and her concerns about her ability to work.  At least two of these notifications were in writing and one specifically requested that she be considered for disability benefits.  The Complaint further alleges that Groska consulted with someone from the benefits hotline and someone from the human resources department about how to make a claim for disability benefits; in March 2000, she followed those instructions.  Thus, read in the light most favorable

to Groska, the Complaint alleges she timely made a claim.  Moreover, her claims for breach of fiduciary duty are not subject to a thirty-day limitation.  Accordingly, the Court denies Defendants' motion insofar as Defendants assert Groska's claims were not made within the time and in the form required by the plans.

**B.      Statutory Penalties**

Groska alleges that the plan administrator failed to provide her with plan documents within thirty days of her January, February, June, and October 2003 written requests, and she is therefore entitled to statutory penalties under 29 U.S.C. § 1132(c).  Defendants argue that Groska's statutory penalty claim should be dismissed because she is not a "plan participant" within the meaning of that statute.  "[A] former employee is owed a duty to receive information from a former employer only if that former employee is a participant, defined as a former employee who has a colorable claim that would prevail in a suit for benefits." *Mead v. Intermec Techs. Corp.*, 271 F.3d 715, 717 (8th Cir. 2001).  Defendants argue that Groska does not have a colorable claim because the Release bars her claims.  At this early stage of the litigation, the Court cannot conclude, as a matter of law, the Release is enforceable.  Accordingly, Defendants' motion to dismiss Groska's statutory penalty claim is denied as premature.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.      Defendants' Motion for Judgment on the Pleadings [Docket No. 11] is DENIED.

Dated:  December 15, 2005

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

8