UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Becky J. Groska,

      Plaintiff,

v.                                                                                                                    Civ. No. 05-114 (JNE/FLN)
                                                                                          ORDER
Northern States Power Company Pension
Plan; Successor(s) to the Northern States
Power Company Pension Plan; NSP Optional
Disability Plan; Successor(s) to the NSP
Optional Disability Plan; and Xcel Energy, Inc.,

      Defendants.

---

Katherine L. MacKinnon, Esq., MacKinnon Law Office, appeared for Plaintiff Becky J. Groska.

Timothy R. Thornton, Esq., and Timothy L. Gelinske, Esq., Briggs & Morgan, PA, and Daniel Shoemaker, Esq., Xcel Energy, Inc., appeared for Defendants Northern States Power Company Pension Plan, Successor(s) to the Northern States Power Company Pension Plan, NSP Optional Disability Plan, Successor(s) to the NSP Optional Disability Plan, and Xcel Energy, Inc.

---

      Becky Groska brought this action against Northern States Power Company Pension Plan, Successor(s) to the Northern States Power Company Pension Plan, NSP Optional Disability Plan, Successor(s) to the NSP Optional Disability Plan, and Xcel Energy, Inc. (collectively, Defendants) pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2000). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (2000). Groska alleges that Defendants violated ERISA by denying her disability benefits, by breaching fiduciary duties, and by failing to provide plan documents. The case is before the Court on Defendants' motion for summary judgment and Groska's motion for partial summary judgment. For the reasons stated below, the Court grants Defendants' motion and denies Groska's motion.

## I.   BACKGROUND

Groska worked for Northern States Power Company (NSP) from November 7, 1988, until mid-August 2000. She enrolled in two disability plans offered by NSP—a core plan and an optional plan. The core plan, part of a combined pension and disability plan, replaced approximately fifty percent of a disabled employee's pre-disability income. The optional plan, funded by employee contributions, allowed enrollees to enhance their monthly disability benefit paid under the core plan by an additional ten or twenty percent of pre-disability income. NSP was the administrator of both plans.

In August 1998, Groska was diagnosed with fibromyalgia. Groska subsequently discussed her condition and its impact on her ability to perform her job with individuals at NSP, including her supervisor and NSP Department of Human Resources (HR) personnel. In late 1999, Groska received a sub-par rating on her annual performance evaluation. She initiated an internal appeal of her rating in early 2000. NSP assigned HR labor relations consultant Lisa Pike to assist Groska with her appeal. During the appeals process, Groska considered the possibility of applying for disability benefits, and inquired about the process for doing so. On March 15, 2000, Groska met with NSP-sponsored physician Dr. Thomas Jetzer, who, after a brief visit, told Groska "we're all a little tired." On March 22, 2000, the three-step appeals process concluded with the final denial of Groska's appeal.

In 2000, NSP and New Century Energies, Inc., merged to form Xcel Energy, Inc. (Xcel). That summer, Groska was informed that her job was "merger affected." As a result, she was given the option to compete with other similarly situated employees for remaining positions or to resign with severance benefits. Groska participated in the competitive job-retention process, during which she received very low ratings. Groska then decided to pursue the severance option.

After receiving written materials describing her severance options and attending a company presentation, Groska elected a severance package that provided wages, health benefits, and pension accruals for ten months after separation, and a release of all claims against Xcel/NSP. Groska signed the NSP Severance Plan Agreement and Release Form (Release) on August 24, 2000. The Release established August 15, 2000, as the effective termination date of Groska's employment.

After leaving NSP, Groska applied for Social Security Disability Insurance Benefits, and on October 22, 2001, was awarded these benefits retroactive to August 16, 2000. This prompted Groska to wonder whether she was entitled to benefits under the plans in which she had enrolled during her employment at NSP. In January 2003, she wrote to request copies of her disability plan documents so that she could apply for disability benefits. The plans responded on February 28, 2003, notified Groska that they regarded her request as a claim for benefits, and denied her claim as untimely. Groska appealed this decision on August 25, 2003. On October 21, 2003, the plans denied the appeal because Groska's claim was untimely and because she had released all claims by accepting enhanced severance benefits.

Groska commenced this lawsuit on January 19, 2005. Defendants now move for summary judgment. Groska moves for partial summary judgment.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Governing formal plan documents and summary plan description**

There is no dispute that the employee benefit plans at issue in this action are governed by ERISA. ERISA requires that employee benefit plans be established by a written instrument. *See* 29 U.S.C. § 1102(a)(1). ERISA also requires the creation of a summary plan description (commonly referred to as an SPD), to inform participants of the terms of a formal plan and its benefits. *See* 29 U.S.C. §§ 1022, 1023; 29 C.F.R. § 2520.102-2 (2006). The parties agree that the Northern States Power Company Pension Plan (2000 Amendment) (the Core Plan) and the NSP Optional Disability Plan (the Optional Plan) are the formal plan documents governing the claims in this action. There is disagreement, however, regarding the identity of the governing SPD. Groska argues that a document titled "Compensation & Benefits for the 90s" (C&B) is the applicable SPD for the Core Plan and Optional Plan. Defendants acknowledge that C&B previously served as the SPD for the Core Plan and Optional Plan, but assert C&B was replaced in 1998 by a booklet titled "Benefits for a New Era." Defendants contend that "Benefits for a New Era" is the governing SPD.

After careful review, the Court concludes "Benefits for a New Era" is not an SPD. Both ERISA and the Department of Labor regulations contain detailed provisions specifying the types

4

of information that must be disclosed in the SPD, including the name and type of the plan; the name and address of the agent for service of process; the name and address of the plan administrator; the plan's eligibility requirements; circumstances which may result in denial or loss of benefits; the source of the plan's financing; the plan year; and claims procedures and remedies available for redress of denied claims. *See* 29 U.S.C. § 1022(a), (b); 29 C.F.R. 2520.102-3 (2006). "Adequate disclosure to employees is one of ERISA's major purposes." *Barker v. Ceridian Corp.*, 122 F.3d 628, 633 (8th Cir. 1997). Because the "Benefits for a New Era" booklet lacks almost all of this information, it does not qualify as an SPD of the Core Plan or Optional Plan. *See Palmisano v. Allina Health Sys.*, 190 F.3d 881, 888 (8th Cir. 1999) (finding alleged SPD that contained only one piece of information required by ERISA "hopelessly inadequate," and giving it no legal effect). On the other hand, C&B includes the various types of information required under ERISA and the Department of Labor regulations. Accordingly, the Court concludes C&B is the governing SPD in this action.

**B.     Release of all claims by Groska**

NSP moves for summary judgment on all counts on the grounds that Groska released Defendants from any claims or liability in exchange for severance benefits when she left her employment in August 2000. Groska argues the Release is invalid and unenforceable. In an Order dated December 15, 2005, in which the undersigned denied Defendants' motion for judgment on the pleadings, the Court stated:

> Under *Leavitt* [*v. Northwestern Bell Telephone. Co.*, 921 F.2d 160 (8th Cir. 1990)], if Groska can substantiate her allegations that NSP's breaches of fiduciary duty caused her unwittingly to relinquish her ERISA rights, enforcement of the Release may be properly refused.

Defendants contend that Groska has failed to substantiate her allegations of breaches of fiduciary duty, and that the Release is valid and enforceable.

5

### 1. *NSP's fiduciary duties*

It is well established that ERISA claims can be waived by a release of claims. *See Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990). The release must, however, be knowing and voluntary; a release will not be enforced if, in light of the totality of the circumstances, the fiduciary obtained the release in violation of its duties to the beneficiary. *See id*. The ERISA fiduciary standard requires that a fiduciary discharge his duties with respect to a plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). To demonstrate a breach of fiduciary duty under ERISA, Groska must show that NSP (1) was a plan fiduciary; (2) was acting in that capacity; and (3) breached a duty. *See In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1175 (D. Minn. 2004).

Groska argues the Release is invalid and unenforceable because NSP, as plan administrator, misled her into foregoing her claim for disability benefits before and immediately after she separated from NSP, and that she was thereby induced to sign a form severance agreement that arguably waives or releases any claim she had for disability benefits. Specifically, Groska asserts NSP breached its fiduciary duties by (1) failing to have consistent and clear claim procedures in place and properly disseminated; (2) failing to recognize Groska had given notice of a disability claim in January 2000, and failing to act on it or provide directions how to proceed; (3) failing to provide a written denial of Groska's claim and give notice of appeal rights; (4) allowing Groska to sign a waiver form when it knew she had a pending disability claim; and (5) failing to inform Groska clearly that the waiver would include ERISA claims.

> a. Failure to have consistent and clear claim procedures in place and properly disseminated

Groska claims the disability benefits system and claims procedures implemented by NSP were inconsistent, confusing, and improperly disseminated. First, Groska asserts NSP breached its fiduciary duties by failing to comply with its obligations to provide summary descriptions of modifications made to the plans. Groska claims NSP failed to inform plan participants of changes made to the vacation and disability benefits systems in a timely manner. Groska has failed to present evidence to substantiate this claim.

ERISA requires plan administrators to furnish plan participants "summary descriptions" of modifications or changes, such as those at issue here, "not later than 210 days after the end of the plan year in which the change is adopted." 29 U.S.C. § 1024(B)(1)(b). The document titled "Benefits for a New Era" expressly notifies plan participants of the vacation/disability benefits changes and states that NSP is providing the booklet to "explain NSP's new Paid Time Off and disability programs." NSP distributed the booklet to participants in late 1998, even though the changes were not effective until January 1999. Subsequent annual benefit enrollment booklets distributed by NSP also provided various details of the Paid Time Off and disability programs.

Next, Groska claims NSP employees misinformed her about proper procedures for applying for disability benefits in violation of their fiduciary duties. Groska specifically identifies Lisa Pike as the employee who told her she needed to see Dr. Jetzer and obtain his approval when Groska inquired about the process for applying for short-term disability benefits. Groska met with Dr. Jetzer on March 15, 2000, and after a brief visit, Dr. Jetzer told Groska "we're all a little tired." Groska asserts she understood this to mean she did not qualify for disability benefits and that Dr. Jetzer had denied her claim. Thus, Groska claims, she did not further pursue a disability claim. Pike denies telling Groska she had to see Dr. Jetzer to apply for

short-term disability and testified that she directed Groska to the benefits division of HR for information on how to apply for disability benefits. Not withstanding this factual dispute, Defendants argue Pike is not a fiduciary within the meaning of ERISA and its governing regulations. The Court agrees.[1]

Under ERISA, a fiduciary is one who exercises discretionary control over some aspect of the management or administration of an ERISA plan, or any control whatsoever over plan assets. *See* 29 U.S.C. § 1002(21)(A); *In re Xcel Energy*, 312 F. Supp. 2d at 1175. A person may be deemed a fiduciary on the basis of his or her functional authority and control relative to the plan. *Id.*; *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993). "Discretion is the benchmark for fiduciary status under ERISA." *Maniace v. Commerce Bank of Kansas City*, 40 F.3d 264, 267 (8th Cir.1994). The performance of "purely ministerial functions" does not, within the framework of ERISA, entail discretionary authority or responsibility. *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217-18 (8th Cir. 1993); *Anoka Orthopedic Assoc., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir. 1990); *see also* 29 C.F.R. § 2509.75-8, D-2 (2006).

The Department of Labor has determined that certain individuals who "have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform administrative functions for an employee benefit plan, within the framework of policies, interpretations, rules, practices and procedures made by other persons, [i.e.,] fiduciaries with

---

[1] Groska appears to concede Pike's non-fiduciary status as an HR employee, arguing instead that Pike is a fiduciary under the theory of "apparent authority." Groska relies on cases from other districts to support her agency theory. The Court rejects this argument and follows the Eighth Circuit and other courts in this district, which utilize the Department of Labor Bulletin, 29 C.F.R. § 2509.75-8, D-1 (2006), when considering the distinction between acts that are discretionary, and thus impose fiduciary responsibilities upon the actor, and acts that are purely ministerial, and thus outside of fiduciary responsibilities and duties. *See Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217-18 (8th Cir. 1993) (citing 29 C.F.R. § 2509.75-8, D-2); *Bd. Of Tr. of W. Lake Superior Piping Indus. Pension Fund. v. Am. Benefit Plan Adm'rs*, 925 F. Supp. 1424, 1430 n.4 (D. Minn. 1996) (citing *Kerns*, 922 F.2d at 217-18).

respect to the plan[,]" are not fiduciaries within the meaning of ERISA. 29 C.F.R. § 2509.75-8, D-2. This non-fiduciary status includes individuals who perform administrative functions of "[o]rientation of new participants and advising participants of their rights and options under the plan" and "[m]aking recommendations to others for decisions with respect to plan administration." *Id.*

It is undisputed that Lisa Pike worked in HR as a labor relations consultant. Pike testified that her duties included assisting employees with internal disputes and grievances, facilitating the peer group review process, and promoting management-employee relations. She also worked on accommodation and discrimination issues. It is also undisputed that Groska's interactions with Pike in 2000 originated through Groska's commencement of a peer group appeal of her 1999 performance rating and included consideration of possible accommodations that could improve Groska's job performance. Even if the Court construes the record in a light most favorable to Groska and assumes Pike told Groska to see Dr. Jetzer to apply for short-term disability, Pike's directive to do so falls squarely within the ministerial acts excluded from fiduciary status in 29 C.F.R. § 2509.75-8, D-2. Groska fails to present evidence demonstrating Pike possessed power to make decisions as to plan policy, interpretations, practices or procedures, or that Pike decided whether or not someone was eligible for benefits under the plans. There is no evidence that Pike dealt with the assets of the plans. On the basis of the record before the Court, Pike was not, as a matter of law, a fiduciary of the Core Plan or the Optional Plan while Groska was employed at NSP.

Finally, the Court has already determined that C&B is the governing SPD. Groska acknowledged receiving C&B during her employment and admitted at her deposition that C&B provides "sufficient detail" to inform her that she should have gone to her manager to apply for

9

disability benefits. Groska has failed to submit evidence of a breach of a fiduciary duty by NSP relating to the clarity of benefits information or the sufficiency of its dissemination.

> b. Failure to recognize Groska's notice of a disability claim, and failing to act on it or provide directions how to proceed

Groska next contends NSP breached its fiduciary duty by failing to understand that it was on notice of a disability benefits claim after January 26, 2000, when she discussed the possibility of disability leave with Pike. Defendants argue they were not on notice of a claim for disability by Groska because she never filed any such claim during her employment. Groska contends she followed the procedures set forth in C&B as best she could, and that Dr. Jetzer orally denied her claim when he told her "we're all a little tired."

"A claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. § 2560.503-1(e)(2006). Moreover, informal statements by an employer's representatives about benefits do not legally alter an ERISA plan. *See Palmisano*, 190 F.3d at 885 (stating "ERISA precludes oral or informal amendments to a plan"); *Barker*, 122 F.3d at 982. The Core Plan, the Optional Plan and C&B expressly provide that an employee's request for benefits under the plans must be in writing to be considered a claim for benefits. C&B, which Groska acknowledges receiving during her employment at NSP, provides specific information about how to apply for disability benefits: "To apply for disability benefits your manager must submit a written request to the Human Resources Department. You must have a statement from your physician identifying the disability. Then a Company-approved doctor and a Disability Committee will review your case."

Groska does not contend the directions for applying for disability benefits as set forth in C&B are unclear. As previously noted, she admitted C&B states "in sufficient detail" that she

should have contacted her manager regarding an application for disability benefits.  Groska presents no evidence showing that her manager, Kevin Lawless, submitted a written request for disability benefits to HR on her behalf.  Groska has failed to submit evidence of her compliance with the procedures for applying for disability benefits during her employment at NSP.  In the absence of a proper claim application, NSP had no notice of her claim for disability benefits that would have triggered fiduciary responsibilities concerning a response to the claim.  As discussed above, Groska has also failed to demonstrate that a plan fiduciary misinformed her about the procedures for submitting a claim for disability.  Thus, Groska has failed to raise any issues of material fact regarding a breach of fiduciary duty by NSP in this regard.

> c. Failure to provide a written denial of Groska's claim and give notice of appeal rights; and allowing Groska to sign a waiver form when NSP knew Groska had a pending disability claim

Groska next claims NSP breached its fiduciary duties by failing to provide proper notice upon denial of her disability claim in March 2000, and by subsequently allowing her to sign a waiver form when NSP knew she had a pending disability claim.  For the reasons already stated, Groska has failed to submit evidence of her compliance with the claim application procedures set forth in C&B.  Without a properly submitted claim, NSP had no active obligation to provide a written denial to Groska or to inform her of any appeal rights.  In addition, because Groska cannot demonstrate that she had a pending claim for disability benefits during her employment, she cannot demonstrate that NSP had knowledge of any such pending claim at the time Groska signed the Release in August 2000.  Consequently, Groska cannot demonstrate that NSP breached its fiduciary duties on these grounds.

      d. Failure to inform Groska clearly that the waiver would include ERISA claims

Finally, Groska contends NSP breached its fiduciary duty by failing to clearly inform her that the waiver in the enhanced severance package included a waiver of her rights under ERISA. Groska claims NSP urged her to take severance and sign the waiver when it knew she was disabled and had a claim for disability benefits.

As previously discussed, Groska's assertion that she gave NSP notice of a disability claim during her employment is unsupported by evidence in the record. Moreover, even if NSP had notice of a potential claim for disability, a finding the Court does not make, the express language of the Release identifies "any and all claims, demands, actions and liabilities whatsoever, whether known or unknown, suspected or unsuspected, the Employee may have or claim to have" as the legal claims Groska released, waived, and discharged through execution of the Release and acceptance of severance benefits. General release forms that release legal claims in exchange for severance benefits are enforceable under ERISA, even when the claimant might have otherwise been eligible for them. *See Mead v. Intermec Techs. Corp.*, 271 F.3d 715, 717 (8th Cir. 2001).

      e. No breach of fiduciary duty

In sum, Groska has failed to sufficiently substantiate her allegations that NSP breached its fiduciary duties in obtaining the Release. Under the totality of the circumstances, the Court concludes the evidence presented by Groska is insufficient to demonstrate NSP caused her to unwittingly relinquish her ERISA rights by signing the Release in August 2000 in exchange for severance benefits. *See Leavitt*, 921 F.2d at 162. Consequently, the Court concludes the Release is valid, and turns to the question of whether its execution by Groska was knowing and voluntary. *Id*.

*2.     Knowing and voluntary*

In determining whether a release is knowing and voluntary, the Court applies general principles of contract. *Id.* In applying these principles to a particular case, the Court must consider: (1) Groska's education and business experience; (2) Groska's input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time Groska had for deliberation before signing the release; (5) whether Groska read the release and considered its terms before signing it; (6) whether Groska knew of her rights under the plans and the relevant facts when she signed the release; (7) whether Groska was given an opportunity to consult with an attorney before signing the release; (8) whether Groska received adequate consideration for the release; and (9) whether Groska's release was induced by improper conduct on NSP's part. *See id.*

It is undisputed that Groska was a management-level employee at NSP who had completed almost all of the coursework required for an MBA at the time she executed the Release. While she did not have any direct input into negotiating the terms of the Release, she did have a choice between a basic severance plan that provided two months of severance benefits and did not include the Release and the enhanced benefit plan, which included ten months of severance benefits in exchange for execution of the Release. Groska chose the longer benefits period provided under the enhanced severance package. Groska received written materials describing the severance options and attended a meeting where the specific details of the severance options were explained. She was given forty-five days to consider signing the Release after she received it, and then fifteen days following execution to revoke her signature. Both the severance plan summary description and the Release itself suggested that Groska seek legal counsel before signing. She did not. However, Groska's failure to consult an attorney

13

does not undermine enforceability of the Release.  *See id.* at 162-63.  Finally, paragraph 10 of the Release states:

> Employee hereby states the Employee understands that it is Employee's choice whether or not to enter into this Agreement and Release, and that the Employee's decision to do so is voluntary and is made knowingly.

On the basis of this evidence, the Court concludes Groska's execution of the Release was knowing and voluntary, and that the Release is both valid and enforceable.

### 3.     *Applicability of the Release to Defendants*

According to the express language of the Release, Groska released, waived, and discharged

> the Company [Xcel or NSP], its predecessors, successors and any affiliated and subsidiary companies, corporations, partnerships or other business enterprises … from any and all claims, demands, actions and liabilities whatsoever, whether known or unknown, suspected or unsuspected, that Employee may have or claim to have in any way relating to or arising out of any event or act of omission or commission occurring on or before the date of Employee's execution of this Agreement and Release …

Pursuant to the plain language of the Release, Groska released, waived, and discharged all of the claims she has asserted against Xcel in this action.

However, under ERISA, the law recognizes the separate existence of employee benefit plans.  "An employee benefit plan may sue or be sued under this subchapter as an entity."  29 U.S.C. § 1132(d)(1).  Further, "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."  *Id.* at § 1132(d)(2).  Accordingly, because the plans are properly recognized as legal entities that are separate from NSP, and because the Release does not name the Core Plan and the Optional Plan, or their successors, as parties to the Release, the

Court concludes that these plans were not released by the agreement signed by Groska on August 24, 2000.[2] Consequently, Groska's allegations of wrongful denial of disability benefits and her claim for statutory penalties against the Core Plan and the Optional Plan, and their successors, in the present action are not barred by the Release.

**C.      Groska's claims against the Core Plan and the Optional Plan and their successors**

   *1.      Denial of benefits*

Groska claims that the Core Plan and the Optional Plan, and their successors, improperly denied her claims for disability benefits. This claim is without merit. As already discussed, Groska has failed to submit evidence of her compliance with the procedures for applying for disability benefits during her employment at NSP. In the absence of a March 2000 claim, Groska cannot substantiate her allegations that her claim was improperly denied by the plans.

As for the denial of Groska's January 2003 claim for disability benefits, the Court reviews this denial for an abuse of discretion by the plan fiduciary when, as in this case, an ERISA plan fiduciary has authority to determine eligibility for an ERISA benefit plan or to interpret plan terms. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A plaintiff making a claim under section 1132(a)(1)(B) bears the burden of proving an entitlement to plan benefits. *See Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992).

The Core Plan and C&B provide that a former NSP employee is not entitled to a Disability Pension unless the former employee requests a Disability Pension within thirty days of the date of employment termination. Groska asserts her employment at NSP terminated on

---

[2]      Defendants contend that because NSP is the sponsor and administrator of both the Core Plan and the Optional Plan, the plans are "affiliated" and "subsidiary" entities of NSP as those terms are used in the Release. Defendants have not cited to any legal authority in support of this contention, and the Court declines to adopt Defendants' unsupported reasoning here.

15

August 16, 2000. Groska testified that on January 24, 2003, she sent a written request to her former employer seeking information about disability benefits under the plans. The plan administrator, now Excel, responded on February 28, 2003, informed Groska that it construed her request as a claim for disability benefits, and denied her claim as untimely because the claim filing period established by the plans had expired. Excel informed Groska of her rights regarding appeal, including her right to review any documents that have a bearing on the claim, and that she could submit information or comments as part of her request for review. Groska appealed the denial on August 25, 2003. Excel denied her appeal on October 21, 2003.

Construing these facts in a light most favorable to Groska, the Court concludes that there is no genuine issue of fact regarding whether Groska's request for disability benefits in January 2003 was untimely. Groska's notice of her intention to seek disability benefits under the plans arrived more than two years after the termination of her employment at NSP. The Court concludes that the denial of Groska's claim for disability benefits was not an abuse of discretion. Accordingly, the Core Plan and the Optional Plan, and their successors, are entitled to summary judgment on Groska's claims of wrongful denial of disability benefits.

  *2. Failure to provide plan documents*

ERISA requires plan administrators to provide participants with copies of plan documents upon written request. *See* 29 U.S.C. § 1024(b)(4). However, a former employee is a participant of a plan only if the former employee has a "colorable claim" that would prevail in a suit for benefits. *Mead*, 271 F.3d at 717 (citing *Firestone*, 489 U.S. at 117-18). Groska was a former employee when she submitted her written request for plan documents in January 2003, but she was not a plan participant.

As discussed above, when Groska sent her written request for relevant plan documents in January 2003, the thirty-day post-termination deadline for filing notice of a claim for disability benefits had long passed. Groska did not have a pending claim for disability benefits when her employment with NSP terminated and she was no longer eligible for disability benefits under the plans in January 2003. Under these circumstances, the Core Plan and the Optional plan, and their successors, did not breach any duties owed to Groska by failing to provide her with plan documents in 2003, because Groska was a former employee without a colorable claim that would prevail in a suit for benefits, and as such was not a participant of the plans. *See Mead*, 271 F.3d at 717. Thus, to the extent the Core Plan and the Optional plan, and their successors, could be held liable for statutory penalties for the plans' alleged failure to supply plan documents to Groska following her requests in 2003, the Court concludes they are entitled to summary judgment on Groska's claims seeking payment of any such penalties.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 41] is GRANTED.

2. Groska's Motion for Summary Judgment on Count III [Docket No. 47] is DENIED.

3. The Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 24, 2007

                                                      s/ Joan N. Ericksen
                                                      JOAN N. ERICKSEN
                                                      United States District Judge